**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A REOLINK NETWORK VIDEO RECORDER MODEL RLN8-410 CURRENTLY LOCATED AT THE NORWAY POLICE DEPARTMENT | No. 2:26-mj-00262-KFW<br>**FILED UNDER SEAL** |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, Christopher Concannon, being duly sworn, depose and state as follows:

## INTRODUCTION

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). I have been a Special Agent with ATF for approximately 21 years. As an ATF Special Agent, I am authorized to investigate violations of the laws of the United States, and I have been involved with numerous criminal investigations involving violations of federal law. I am a law enforcement officer with authority to execute arrest and search warrants under the authority of the United States. *See* 18 U.S.C. § 3051. As an ATF Special Agent, I have completed the Criminal Investigator Training Program and ATF Special Agent Basic Training at the Federal Law Enforcement Training Center in Glynco, Georgia, where I received training in the investigation of federal crimes involving firearms, narcotics, arson and explosives. I am currently assigned to the ATF Boston Field Division – Portland Field Office. I have participated in numerous arrest and seizure warrants involving a variety of offenses, including violations pertaining to firearms investigations. I have personally reviewed reports and documentation, observed scene photographs, and have had conversations

with ATF personnel and other law enforcement agencies, including personnel employed by the Oxford County Sheriff's Office ("OCSO"), in regard to the offenses referred to below. I am familiar with the facts and circumstances of this matter concerning GROVER HARMON, BRIAN MCPEAK, and others, who are presently the subjects of an ATF investigation.

2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to provide facts demonstrating that probable cause for the requested warrant exists, and does not set forth all of my knowledge about this matter.

3. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, see 18 U.S.C. § 2711(3)(A)(i).

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. The property to be searched is a Reolink Network Video Recorder Model RLN8-410 (hereinafter the "Device") seized from the residence of Brian MCPEAK, located at 24 Cummings Rd, Buckfield, ME, on May 4, 2026, pursuant to a state judicially-authorized search warrant. The Device is currently located at Norway Police Department's Digital Evidence Processing Area. An Image of the Device appears below.




5. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

**<u>INVESTIGATION AND PROBABLE CAUSE</u>**

6. The Oxford County Sheriff's Office and the ATF Portland Field Office are investigating a burglary and theft of firearms that occurred on March 8, 2026, at approximately 1:34 a.m., at a firearms store operated by a Federal Firearms Licensee (FFL), in West Paris, Maine (hereinafter, the "Gun Shop").

7. On March 8, 2026, Oxford County Sheriff's Office (OCSO) personnel responded to an alarm activation at the Gun Shop. Upon arrival, personnel made contact with the owner of the Gun Shop, who had arrived prior to law enforcement. Personnel checked the business and determined that no individuals were present. Personnel reviewed video surveillance footage, which revealed an unknown individual

forced entry into the Gun Shop and stole numerous handguns. The owner of the Gun Shop completed a Report of Firearms Lost or Stolen reporting thirteen handguns missing from inventory.

8. On March 9, 2026, ATF Personnel responded to the Gun Shop and conducted an inventory, locating one of the firearms that had been included in the initial Report of Firearms Lost or Stolen, bringing the total number of handguns missing from inventory to twelve. For purposes of this affidavit, the handguns included on the Report of Firearms Lost or Stolen are referred to as "the stolen firearms."

9. A review of the surveillance footage depicted the following:

i. At approximately 1:34 a.m., an individual appeared in the driveway of the Gun Shop, utilizing a hatchet to break glass prior to forcing entry into the business as depicted below.









ii. The unknown individual appeared to take approximately twelve (12) handguns from the wall mounted gun rack and place them in a bag. Screen shots of the surveillance footage appear below.







iii. Approximately 40 seconds after entering, the unknown individual exited the Gun Shop. The unknown individual appeared to turn off their head lamp while approaching Bethel Road in the direction

from which they appeared. A screen shot of the surveillance footage appears below:




10. While reviewing exterior surveillance footage I observed that at approximately 1:24:40 a.m., a vehicle appeared to stop on Bethel Road in the area of and the same side of the street as Dig Maine Gems located at 110 Bethel Road, which is located next to the Gun Shop. I observed that the vehicle then proceeded past the Gun Shop in the direction of the Rusty Lantern Market located at 175 Bethel Road. I was able to discern that the vehicle was an extended cab pickup truck but could not discern the color of the vehicle as the surveillance footage appeared in black and white.

11. At approximately 1:37:48 a.m., I observed that an extended cab pickup truck drove past the Gun Shop from the direction of Rusty Lantern Market. I observed that the vehicle was traveling in the same direction that the individual was last seen heading. I observed that the vehicle stopped on Bethel Road in the area across the street from Dig Maine Gems. I observed an individual approaching the vehicle from the same side of the road.

12. I subsequently reviewed surveillance footage from the Rusty Lantern Market and the Big Apple Store, located at 213 Bethel Road, both located approximately one mile from the Gun Shop. I observed what appeared to be the same extended cab pickup truck captured by the exterior surveillance footage at J & K Sporting Goods, driving past the gas stations multiple times between approximately 1:25 a.m. and 1:38 a.m. I was able to discern the color of the extended cab pickup truck as maroon[1].

***Recovery of Stolen Firearms***

13. On March 11, 2026, Franklin County, ME Sheriff's Office recovered firearms, including two reported stolen from J & K Sporting Goods on March 8, 2026, pursuant to a state judicially-authorized search warrant at a residence in Carthage, ME. The firearms are identified as a Springfield Armory, model 1911, .45 caliber pistol, serial number NM792375, and a Smith & Wesson, model 648-2, .22 caliber revolver, serial number CFU2235.

***Information relating to Grover HARMON***

14. On April 10, 2026, Norway, ME Police Department ("NPD") received information that Grover HARMON, a previously convicted felon[2], had active arrest warrants, was potentially operating a maroon Chevy Silverado and was staying with his girlfriend at her apartment in Norway, ME.

15. On April 23, 2026, a NPD officer observed a male who he believed to be HARMON getting into a maroon Chevrolet Silverado bearing Maine registration plates

[1] I reviewed the gas stations surveillance footage to determine if any vehicles with similar characteristics appeared in the footage subsequent to the extended cab pickup truck passing J & K Sporting Goods at approximately 1:37:01 a.m. I did not observe any vehicles with similar characteristics around that time.

[2] HARMON was convicted of Unlawful Possession of Methamphetamine, Class C, on 11/04/24, in Cumberland County, ME, Docket No. CUMCD-CR-2024-01759.

registered to D. M., at a carwash in Norway. The officer stopped the vehicle in the parking lot of Norway Auto Sales. The operator, subsequently confirmed to be HARMON, exited the vehicle and fled on foot. HARMON was taken into custody after a brief chase and was booked on the outstanding warrants as well as violating conditions of release and refusing to submit to arrest or detention. HARMON's girlfriend was in the vehicle at the time. A search was conducted of the vehicle per HARMON's probation conditions. Three pistol magazines containing .45 caliber ammunition, as well as additional .45 and .357 caliber ammunition were located. Law enforcement contacted D.M., the owner of the vehicle, who indicated HARMON had borrowed the vehicle from him and denied having/storing any firearm magazines or ammunition in the vehicle.

16. I am aware that the firearms stolen from J & K Sporting Goods included .45 and .357 caliber handguns.

17. The maroon Chevrolet Silverado with Maine registration appears consistent with the suspect vehicle captured by the surveillance footage and is hereinafter referred to as the Suspect Vehicle.

***Recovery of Stolen Firearms***

18. On April 29, 2026, NPD and other law enforcement personnel executed a state judicially-authorized search warrant at HARMON's girlfriend's residence in Norway, ME. During the execution of the search warrant, NPD recovered two firearms that had been reported stolen from J & K Sporting Goods on March 8, 2026, amongst other items. The stolen firearms are identified as follows: Taurus, model 627, .357 caliber revolver, serial number KX343382, and Ruger, model SR1911, .45 caliber pistol, serial number 673-55760.

***Interview of Grover HARMON***

19. On May 1, 2026, a Detective with the Oxford County Sheriff's Office and I interviewed HARMON in an interview room at the Oxford County Jail[3]. HARMON was advised of his rights pursuant to *Miranda* and agreed to speak with investigators in a recorded interview.

20. HARMON said there were four individuals involved in the burglary of the Gun Shop, including himself, a man he knew as "Wade", Brian MCPEAK, and MCPEAK's narcotics supplier from Portland, ME, whose name he did not know.

21. HARMON said the plan was devised at MCPEAK's residence in Buckfield, ME, with "Wade" and MCPEAK. HARMON said MCPEAK's supplier from Portland was not present. HARMON said "Wade" brought up the idea to break into the Gun Shop and it appeared "Wade" had been in the Gun Shop because he described the layout, including the location of the firearms. HARMON said he agreed to the role of driver, and they planned to provide stolen firearms to MCPEAK's narcotics supplier in exchange for narcotics.

22. HARMON said he drove himself and "Wade" to the Gun Shop. HARMON said he was driving the Suspect Vehicle and added that "Wade" was the only other occupant. HARMON said he pulled off the road and stopped near the parking lot of a jewel or gem place located next to the Gun Shop. HARMON said "Wade" exited the vehicle. HARMON recalled that "Wade" was wearing a black hoody with a graphic and

[3] The following is intended to provide a brief summary of the substance of the interview. I confirmed with HARMON that his charges stemming from his April 23, 2026, arrest by the NPD had been resolved. HARMON acknowledged that he pled guilty to his charges. HARMON confirmed that he was not represented by an attorney relating to that incident. I referenced that HARMON may have some other things pending. HARMON indicated that he filled out paperwork to have an attorney appointed, but one had not been appointed to date.

writing on the front, which he thought could have been related to a basketball team. HARMON recalled that "Wade" had a backpack and hatchet when he exited the vehicle.

23. HARMON said he did some drive byes after dropping off "Wade" while waiting to pick him up. HARMON said he then observed "Wade" running down the road and after picking up "Wade" they traveled to MCPEAK's residence. HARMON said "Wade" had a "bunch of guns" in a bag. HARMON stated he held on to two of the firearms, which he described as a .45 ACP and a .357 Mag. which were his payment for driving during the burglary and theft of firearms. HARMON said they were the two firearms that law enforcement recovered at his girlfriend's residence.

24. HARMON didn't know which firearms "Wade" ended up with but said it was a "bunch of them", including some recovered by law enforcement. HARMON referenced that "Wade" was buying drugs from an individual that was residing around the Walmart in Oxford, ME. HARMON said he heard that the individual had been kicked out of where he was residing in Oxford and had relocated to Carthage where he got arrested with firearms.[4]

25. HARMON said he was aware that some of the firearms that MCPEAK ended up with went to his supplier in exchange for cocaine. HARMON was aware that MCPEAK had a .357 and a Magnum Research .45 caliber Desert Eagle and some 1911's, and that MCPEAK might be storing the firearms he kept under a structure on his property or in the rafters of his basement. When asked if MCPEAK knew the firearms were stolen, HARMON stated that MCPEAK was the one who set it up.

---

[4] On March 11, 2026, Franklin County, ME Sheriff's Office recovered firearms, including two reported stolen from J & K Sporting Goods on March 8, 2026, pursuant to a search warrant at 810 Carthage Road, Carthage, ME.

26. HARMON consented to a search of his cell phone[5] by law enforcement.

***Review of HARMON's cell phone extraction***

27. Location information recovered from HARMON's cell phone indicated that the Device was in the area of the Gun Shop around the time of the burglary.

28. Location information recovered from HARMON's cell phone indicated that the Device was in the area of MCPEAK's residence following the burglary.

29. I observed that HARMON's cell phone sent another contact number numerous photos along with descriptions of firearms, consistent with firearms reported stolen from the Gun Shop.

30. Location information recovered from HARMON's cell phone indicated that the Device was in the area of MCPEAK's residence on April 22, 2026. I observed that HARMON's cell phone sent another contact number videos of a woman similar in appearance to HARMON's girlfriend shooting a revolver and a pistol. HARMON's cell phone included descriptions of the firearms. I recognized the firearms in the video and descriptions as being consistent with firearms reported stolen from the Gun Shop and recovered pursuant to a state judicially-authorized search warrant at HARMON's girlfriend's residence on April 29, 2026. I recognized the area where the female was shooting as being consistent with MCPEAK's yard.

---

[5]When I initially asked HARMON if he would consent to a search of his cell phone. HARMON indicated that he would not consent based on there being intimate content of his girlfriend. I told HARMON that I would be applying for a search warrant if his cell phone was located. I advised HARMON that I was not trying to influence his decision about whether or not to consent but wanted to be honest with him. HARMON indicated that he would consent to the search. HARMON thought the phone would have a couple photos of the stolen firearms that he had. I told HARMON that consenting was completely voluntary and he shouldn't feel pressure to consent. I reiterated to HARMON that if he did not consent to a search, I would apply for a search warrant and that it would be up to a Judge. HARMON advised that he understood and indicated that he would consent. HARMON signed a ATF Consent to Search, ATF Form 3220.11.

***Recovery of Stolen Firearms and DVR System from MCPEAK's Residence***

31. On May 4, 2026, a state judicially authorized search warrant was authorized for MCPEAK's residence located at 24 Cummings Rd, Buckfield, ME.

32. On the same date, OCSO and other law enforcement personnel executed the search warrant. During the execution of the search warrant at the residence, OCSO recovered three firearms that had been reported stolen from J & K Sporting Goods on March 8, 2026, amongst other items. The stolen firearms are identified as follows: Magnum Research, model Baby Eagle 3, .45 caliber pistol, serial number SB-A2518, a Ruger, model SR1911, 9mm caliber pistol, serial number 673-98548, and a Taurus, Model 692, .357 caliber revolver, serial number MS577265.

33. Personnel noted the presence of an exterior video surveillance camera directed at the driveway of the residence. Personnel located a Reolink Network Video Recorder Model RLN8-410 in the basement of the residence.

34. On the same date, an amended state judicially-authorized search warrant was authorized for MCPEAK's residence located at 24 Cummings Rd, Buckfield, ME, which included the seizure of cellular telephones and any electronic recording devices to include home security systems belonging to MCPEAK or anyone at the residence within proximity of the drugs; or whom is found to have drugs in their possession. MCPEAK's cellular telephone and the Reolink Network Video Recorder Model RLN8-410 were recovered pursuant to the search warrant.

35. On May 8, 2026, a state judicially-authorized search warrant was authorized for the Device. NPD was ultimately unable to conduct an extraction because they lacked the necessary cables to interface the Device with the forensic tool.

***Target Letter Service to MCPEAK***

36. On May 29, 2026, an Oxford County Sheriff's Detective and I traveled to MCPEAK's residence to serve him a target letter. After serving MCPEAK the target letter I asked if he had any questions. MCPEAK indicated without any further questioning that HARMON brought the stolen firearms to his residence when he wasn't home and without his permission. I told MCPEAK that while I was interested in speaking with him it would be more appropriate to do so with MCPEAK and defense counsel.

37. Consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

38. *Manner of execution*. Because this warrant seeks only permission to examine items already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## Conclusion

39. I believe that the Device contains video footage that will assist investigators with identifying who HARMON was with and what they were wearing when they arrived at MCPEAK's residence in the Suspect Vehicle following the burglary and theft of firearms at the Gun Shop. Any such footage will be compared to the Gun Shop's surveillance footage.

40. On August 6, 2026, I had contact with ATF's Digital Forensics AV Unit regarding the Device. They suggested that I send the Device to the ATF lab in Norfolk, VA, so they could attempt a forensic image.

41. Based on the foregoing, I request that the Court issue the proposed search warrant as there is probable cause to believe that violations of Title 18, United States Code, Section 922(g)(1) (Felon in Possession of a Firearm), Title 18, United States Code, Section 922(u) (Theft of Firearms from an FFL) and Title 18, United States Code, Section 922(j) (Possession of Stolen Firearms) have occurred, and that evidence of those violations, including the items as set forth in **Attachment B**, are likely to be found on the Device to be searched as set forth in **Attachment A**. I therefore respectfully request that a search warrant be issued for the Device listed in **Attachment A** authorizing seizure of the items as listed in **Attachment B** of this Affidavit.

Dated this 12th day of August, 2026.

Christopher Concannon
Special Agent
Alcohol, Tobacco, Firearms and Explosives

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedures

Date: Aug 12 2026

City and state: Portland, Maine

*Judge's signature*

Karen Frink Wolf, U.S. Magistrate Judge
*Printed name and title*